**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH HARTFORD, ) | |
| ) | CASE NO.   5:08-cv-175 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Elizabeth Hartford ('Hartford") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Hartford's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, 1381 *et seq*.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

**I.  Procedural History**

On June 10, 2004, Hartford filed an application for DIB and SSI alleging a disability onset date of April 1, 1999 and claiming that she was disabled due to "nerve damage numbness in left leg feeling is gone in left foot back surgery pain depressed." Her application was denied initially and upon reconsideration.  Hartford timely requested an administrative hearing.

On August 6, 2007, Administrative Law Judge Alfred J. Lucas ("ALJ") held a hearing during which Hartford, represented by counsel, testified.  Dr. Herschel Goren, a neurologist testified as the medical expert ("ME").  On August 29, 2007, the ALJ denied benefits upon his finding that Hartford was not disabled because she could perform her past relevant work as a gas station cashier and cleaner, despite the limitations caused by her impairments.   The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Hartford filed an appeal to this Court.

On appeal, Hartford claims the ALJ erred by: (A) finding that she did not meet Listing 1.04A and (B) finding that she was capable of returning to past relevant work.

**II.  Evidence**

*Personal and Vocational Evidence*

Born on October 24, 1957 and age forty-nine at the time of her administrative hearing, Hartford is a "younger" person.  *See* 20 C.F.R. § 404.1563(c).   Hartford has an eleventh grade education.  She has past relevant work experience as a home health aide, gas station attendant, and office/hotel cleaner.

***Medical Evidence***

Hartford reportedly had back surgery in 1981, reinjured her lumbar spine at work in 1997, and underwent a lumber microdisctomy at L5-S1 in 1998. (Tr. 167, 468.) She alleges disability since April 1, 1999. (Tr. 54.)

On September 13, 2000, Hartford underwent an electromyogram ("EMG"). Results of which were suggestive of, but inconclusive for, a chronic, mild L-5 root lesion. The doctor performing the EMG noted that Hartford complained of numbness of the lateral aspect of the left that, however, there was "no . . . evidence for femoral nerve involvement to explain the thigh symptoms, and there was no evidence for L-3 root involvement." (Tr. 175.) A nerve conduction study, performed the same day, showed a "prolonged left H-reflex consistent with proximal slowing, as would be seen in a left L5 or S-1 root lesion." (Tr. 176.)

On January 21, 2001, Hartford saw Dr. Norman Lefkovitz and complained of low back and left lower extremity pain. (Tr. 174.) Dr. Lefkovitz noted lumbar tenderness and tightness, limited lumbar range of motion, diminished sensation in her lateral left foot, and diminished left ankle jerk. (Tr. 174.) However, motor strength was intact. (Tr. 174.)

In March 2001, Hartford sought psychiatric evaluation with complaints of depression and anxiety. (Tr. 372.) Hartford reported that she had threatened to commit suicide in the past, had been hospitalized for five days, felt depressed and anxious with fluctuating moods, and had been taking Topomax, Remeron and Ativan, but had been off her medications for three weeks. (*Id*.) Dr. Anil Parikh diagnosed Hartford with major depressive disorder and assigned Global Assessment of Functioning ("GAF") scores of

3

60 (present) and 65 (past year). (Tr. 373.)  She subsequently saw a psychotherapist regularly.  (Tr. 375-405.)  She generally responded well to medication without side effects, reported symptoms of depression along with grief and stress related to family medical problems, the death of her mother, and her physical symptoms, and denied drug or alcohol use. (Tr. 375-405, 440-41.)

In May 2001, Dr. Lefkovitz reported to the Worker's Compensation carrier that the MRI study done in 2001 revealed severe degenerative disc changes at both the L4-5 and the L5-S1 levels with postoperative residual epidural scarring noted in the lateral recesses on the right side.  He also noted that there was left sided sciatica and lumbar spine disc displacement.  (Tr. 173.)

On June 1, 2001, Dr. Lefkovitz reported that Hartford had low back pain with radiation of pain into her left lower extremity. (Tr. 163.)  She had tenderness and tightness affecting the lumbar paravertebral muscles with decreased range of motion. (Tr. 163.)  She also had absent left ankle jerk and diminished sensation in the lateral left foot. (Tr. 163.)  Dr. Lefkovitz stated that Hartford was "not capable of sustaining employment at this time secondary to severe back and radiating left lower extremity pain" and required analgesic medications. (Tr. 163.)  He suggested a vocational rehabilitation counselor or nurse should help manage the patient.  (*Id*.)

In July 2001, independent medical examiner, Dr. Jack Jones, saw Hartford in connection with her worker's compensation claim.  (Tr. 165-72).  Hartford was reportedly taking Vicoprofen and Neurontin, but was not using a back brace or TENS unit, and had not received injections. (Tr. 167.)   Hartford stated that she could sit for one hour, stand 10-15 minutes, walk 30 minutes if she could hang onto something and

10-15 minutes if she could not, lift/carry up to 10 pounds, bend or twist perhaps twice per hour, kneel or crawl 5-10 minutes at a time, perform no ladder climbing, and had no restrictions with regard to hand or arm work. (Tr. 168.)  Dr. Jones opined that Hartford had reached maximum medical recovery. (Tr. 170.)  He further stated that Hartford was not able to return to her past job as a custodian, but could return to work with restrictions including: sitting one hour; standing 15 minutes; walking 15 minutes; lifting/carrying up to 10 pounds; bending or twisting twice per hour; kneeling or crawling 5-10 minutes at a time; no ladder climbing; and, no restriction on hand and arm work. (Tr. 170-71.)   On examination, Hartford had spinal tenderness, but Fabere's test (for hip pathology) and Lasegue's sign (straight leg raising test for tension of the sciatic nerve) were negative. (Tr. 169.)  Hoover's test was positive, indicating suboptimal muscular effort during the examination (Tr. 169).  Reflexes were normal except absent left ankle jerk reflex. (Tr. 169.)  Heel and toe walking were fair, squatting was 90 percent of normal, and range of motion was somewhat diminished. (Tr. 169.)  Dr. Jones opined that Hartford required no further treatment other than non-prescription medications and an at-home therapeutic exercise program. (Tr. 171.)  Dr. Jones stated that Hartford did not appear to be temporarily and totally disabled and recommended against extending benefits. (Tr. 171-72.)

     A July 1, 2003 MRI of the lumbosacral spine was abnormal, revealing severe degenerative disc changes at both the L4-5 and L5-S1 levels with postoperative residual epidural scar formation in the lateral recesses off the right side.  (Tr. 347.)  A small meningeal cyst was also seen posterior to the S1 vertebral body. (*Id*.)  Early degenerative disc changes and minimal posterior protrusion involving the L2-3 vertebral

level were noted. (*Id.*) Other than these changes, the study was essentially unchanged from the February 2001 MRI.

In July 2004, Dr. Lefkovitz reported that Hartford had left lower extremity radiculopathy and failed low back syndrome. (Tr. 305-06.) He indicated that Hartford had a normal gait and did not require an ambulatory aid, and that her intellectual functioning was normal, but that she was unable to lift or bend. (Tr. 306.) Included in Dr. Lefkovitz's report were the notes of Dr. Kathie Greene and Dr. Lefkovitz's own office notes from 2005 and 2006. (Tr. 310-47.) These notes indicated that Hartford was using a TENS unit to reduce her pain and that she had an epidural steroid injection on February 25, 2005. (Tr. 336 -37.)

In August 2004, Dr Lokendra B. Sahgal, a family practitioner, performed a consultative examination of Hartford at the Agency's request. (Tr. 247-49.) Hartford complained of chronic back pain with some left ankle and foot numbness, leg pain, and recent hip pain. (Tr. 247.) She reported that she received cortisone injections every two to three months, which helped. (Tr. 247.) She also used marijuana at least two to three times per month with friends, Zocor (for cholesterol), Lisinopril (for high blood pressure), hydrochlorothiazide (diuretic), and Vicoprofen and Zanaflex for pain. (Tr. 247-48.) On examination, Hartford had decreased left foot sensation and absent left ankle reflex, but neurological examination was otherwise normal, with all other reflexes present and equal, with essentially normal muscle testing, no muscle spasm, and no muscular atrophy. (Tr. 248.) Dr. Sahgal opined that Hartford's ability to lift and carry was somewhat limited due to obesity, chronic low back pain, and S1 radiculopathy. (Tr. 249.) Hartford had no difficulty with tasks requiring walking; her ability to perform

6

postural maneuvers was intact; and, her mental acuity was normal. (Tr. 249.)

State Agency physicians reviewed Hartford's records in August and November of 2004 and opined that Hartford could perform light work with limited reaching and only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 255-59.)

Dr. Gary Sipps performed a consultative psychological examination of Hartford in October 2004. (Tr. 262-67.)  He opined that Hartford had major depressive disorder and assigned a GAF score of 49. (Tr. 267.)  Dr. Sipps further reported that Hartford had adequate ability to concentrate and attend to task, understand simple directions, and perform remote recall. (Tr. 266.)  He indicated that Hartford was no more than mildly impaired in comprehension of complex material, had low average recent recall, and had mildly impaired immediate, working, and general memory. (Tr. 266.)  Dr. Sipps concluded that Hartford had low average capacity for sustained concentration and persistence and was mildly impaired in her ability to direct her attention to tasks at hand for a reasonable period of time. (Tr. 266.)  Dr. Sipps opined that Hartford's capacity for social interaction was adequate to borderline and that she was moderately impaired in her ability to relate with the general public, supervisors, and co-workers. (Tr. 266.)  Dr. Sipps further opined that Hartford's capacity for adaption was low average to borderline, that she was mildly impaired in her ability to respond appropriately to novel situations, and that she was moderately impaired in her ability to handle effectively changes in work setting and demands. (Tr. 267.)  Insight and judgment appeared adequate. (Tr. 267.)  However, her "overall functioning is at a markedly reduced level of efficiency given her current treatment regimen." (Tr. 267.)

State Agency psychologists reviewed Hartford's records in December 2004 and April 2005 and concluded that she could perform simple, routine work with no more than superficial interaction with the public and co-workers. (Tr. 270-87.)

Hartford underwent testing for sleep apnea in June 2006 and was found to have good response to continuous positive airway pressure ("CPAP"). (Tr. 354-55.) Hartford reported a two week history of left knee pain in June 2006. (Tr. 368-69.) Hartford continued to see Dr. Lefkovitz for low back pain radiating into her left leg. She reported in that her medications and use of a TENS unit helped with her pain. (Tr. 443, 447.) She had positive straight leg raising, lumbar paravertebral muscle tightness, and limited lumbosacral range of motion, and diminished left ankle jerk. (Tr. 443, 447.)

***Testimony of Plaintiff***

Hartford testified that she was 40 years old, weighed 274 pounds, and lived with her younger brother. (Tr. 463-64.) Hartford stated that she drove about twice a week - to the grocery, "to the mail," and to medical appointments. (Tr. 465.)

Hartford testified that she had previously worked for a janitorial service and as a home health care aide. (Tr. 466-67.)

Hartford testified that she had pain in her left hip and left leg, as well as numbness in her two end toes of her left foot with some numbness in the left calf. (Tr. 470.) Her leg pain was constant at a level of 5/10 and reached 10/10 about 15 days per month. (Tr. 471.)

Hartford estimated that she could stand less than 10 minutes at a time and walk a couple hundred feet without a cane and twice as far with a cane. (Tr. 473-74.) Plaintiff stated that she was able to sit, but flexed her weight back and forth. (Tr. 474.)

She asserted she has difficulty using the stairs due to problems with her left knee; she could bend at the waist and touch her knees, but not her ankles; she could not squat; she could lift a gallon of milk; and rainy and cold weather aggravated her left knee pain. (Tr. 474-46.)

Hartford testified that she spent two hours a day taking care of her brother. (Tr. 482.) She did the cooking, cleaning, and her own laundry. (Tr. 483.) She also stated that was able to dress and feed herself. (Tr. 483.)

***Testimony of the Medical Expert***

Dr. Goren testified as an ME at Hartford's administrative hearing. (Tr. 489-505.) He opined that Hartford's impairments did not meet or equal any Listing, either individually or in combination. (Tr. 492.) He opined that she was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 493.) The ME further stated that Hartford had normal ability to sit, stand, and walk, but was limited to: no use of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; no work around moving machinery or at unprotected heights; no high production quotas (which would exclude assembly line work and piece-rate work); and only superficial interaction (which would exclude arbitration, negotiation, confrontation, supervision of others, etc., but would allow the type of interaction a supermarket cashier would have with a customer). (Tr. 493-94.)

On cross-examination, the ME noted that straight leg raising tests were not always positive on examination. (Tr. 497-98.) The ME further testified that he was unsure from Dr. Lefkovitz's March 2007 report whether the doctor was opining that Hartford was disabled or Hartford was telling Dr. Lefkovitz that she was disabled. (Tr.

9

500.) He opined that Dr. Lefkovitz's reports were "vague and less specific than . . . he would expect from . . . a board certified neurologist and more vague than . . . the rules of the Social Security Administration require." (Tr. 501). The ME further testified that the record did not show that Hartford had neural anatomic distribution of pain as required by Listing 1.04. (Tr. 501-04.)

### III.  Standard for Disability

A claimant is entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, which can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second,

the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1. Hartford met the insured status requirements of the Act through December 31, 2004.

2. Hartford has not engaged in substantial gainful activity since the alleged onset of disability.

3. Hartford has the following severe impairments: degenerative disc disease of the lumbar spine; obstructive sleep apnea; obesity; and major depressive disorder.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. Hartford has the residual capacity to perform light work with restriction.

6. Hartford is capable of performing past relevant work as a gas station cashier and cleaner.

11

      7.      Hartford has not been under disability, as defined in the Act from April 1 1999 through the date of the ALJ's opinion.

(Tr. at 19-26.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI. Analysis

Hartford claims the ALJ erred in finding that (A) she does not meet Listing 1.04A and (B) she is capable of returning to past relevant work. The Commissioner denies that the ALJ committed error.

**A.    Failure to Meet Listing 1.04A**

Hartford maintains that the ALJ erred in determining that Hartford did not meet Listing 1.04A.

> To meet Listing 1.04A, a claimant must prove the following:
>
> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg rasing test (sitting and supine);

20 C.F.R. Pt 404, Sbpt. P, App. 1 § 1.04.

The ALJ found that although evidence exists that meets Listing 1.04A, Hartford does not meet the listing because evidence regarding motor loss and straight leg raise testing is inconsistent or insufficient. (Tr. 21.)

The ALJ noted from January 12, 2001 until September 2006, Dr. Lefkovitz reported that Hartford had full motor strength in her lower extremities. On January 30, 2007, Dr. Lefkovitz reported "mild 'giveway' weakness affecting her left lower extremity." Thereafter, Dr. Lefkovitz made no mention of motor strength.

The ALJ also remarked that although Dr. Lefkovitz reported positive straight leg raising tests, he failed to indicate whether those tests were performed in the supine and seated positions. The ALJ further noted that Dr. Jones recorded positive straight leg test result, but observed positive Waddell and Hoover signs, indicating exaggeration of symptoms.

The ALJ stated further that he gave full weight to the ME's opinion that the evidence did not support a finding that Hartford's lumbar degenerative disc disease meets or medically equals a listed impairment. The ALJ noted that the ME had the opportunity to

13

review the entire record, had the benefit of Hartford's testimony, and is a board-certified neurologist.

Hartford argues that the ALJ improperly gave the ME's opinion full weight and that substantial evidence does not exist for the ALJ's determination that Hartford does not meet the Listing.

Hartford maintains that the ALJ erred in giving more weight to the ME than to her treating physician. The Commissioner correctly notes that the only doctors in the record that opined specifically whether Hartford met Listing 1.04A were the ME and the state agency physicians. Hartford's treating physician, Dr. Lefkovitz never opined on this matter. Therefore, no basis exists under which to argue that it was improper to give greater weight to the ME than Dr. Lefkovitz regarding whether Hartford meets Listing 1.04A.

Hartford further asserts that the ME's opinion that Hartford does not meet Listing 1.04A is not entitled to full weight. To determine the appropriate weight, the ALJ must evaluate medical expert opinions under the same factors applicable to treating medical sources. *See* 20 C.F.R. § 404.1527(d), (f). Specifically, the ALJ must examine:

> 1. The length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship;
>
> 2. The 'supportability' of the opinion-whether it is supported with relevant evidence and whether it is well explained;
>
> 3. The consistency of the opinion with the record as a whole;
>
> 4. The specialization, if any, of the treating source; and
>
> 5. 'Other factors' brought to the ALJ's attention, including, for example, the treating source's knowledge of the SSI or DIB programs and its evidentiary requirements.

20 C.F.R. § 404.1527(d)(2)-(6).

Hartford asserts that the ME's opinion was not entitled to "less weight" because the "ME apparently had an agenda since he misstated evidence." Hartford explains that the ME testified that Dr. Jones noted Waddell and Hoover signs indicating exaggeration of symptoms, but only Hoover signs were specifically identified in Dr. Jones's records. However, the record reveals that Dr. Jones did, in fact, note a Waddell sign, but did not identify it as such.

Under the Waddell test, an examiner looks for certain clinical findings while evaluating a patient complaining of lower back pain. Gordon Waddell et al., Nonorganic Physical Signs in Low-Back Pain, 5 SPINE 117, 117-25 (Mar. -Apr. 1980). The existence of Waddell signs can imply that the back pain has no physical cause or that the patient is exaggerating her pain. One such Waddell sign is "distracted leg raise," which means that the patient complains of pain during a supine straight leg raise, but does not do so when the straight leg raise is performed in a seated position. *Id.*

While the words "Waddell sign" do not appear in Dr. Jones's notes, Dr. Jones did observe that Hartford demonstrated a positive Waddell sign of distracted leg raise by complaining of discomfort on her straight leg raise, but noting no discomfort from the seated straight leg raise.[1] Therefore, the ME did not misstate the evidence when he testified hat Dr. Jones found a "Waddell's distraction sign." (Tr. 490.)

---

[1] Dr. Jones wrote:

> [R]ight and left straight leg raising were done in a sitting position without discomfort to 80 degrees and in a supine position to 75 degrees on the right and 30 degrees on the left with complaints of back discomfort with left leg rasing. . . .

(Tr. 169.)

15

Next, Hartford questions the ALJ "buying the ME's argument that he didn't know whether [straight leg raising tests performed by Dr. Lefkovitz] were done in a supine or sitting position." Plaintiff's Brief at 12 (citing Tr. 499). However, Dr. Lefkovitz does fail to note Hartford's position in the straight leg raising tests. Listing 1.04A requires positive straight-leg raising tests in both the supine and sitting position. It is not unreasonable for the ME and the ALJ to find Dr. Lefkovitz's findings in the matter to be vague and insufficient to establish that Hartford meets Listing 1.04A. Thus, sufficient evidence supports the ALJ's determination that Hartford does not meet Listing 1.04A.

### B. Ability to Perform Past Relevant Work

Hartford argues that even if substantial evidence supports the ALJ's finding that she did not meet Listing 1.04A, substantial evidence does not support the ALJ's finding that Hartford has the ability to return to past relevant work as a gas station attendant and cleaner. Hartford maintains the ALJ erred in disregarding the opinions of Drs. Lefkovitz and Jones.

Hartford contends that the ALJ assigned insufficient weight to the opinion of a treating physician, Dr. Lefkovitz, that Hartford cannot return to work. The ALJ is not bound by the opinion of a claimant's treating physician; however, if he chooses to reject the opinion, he must articulate a reason for doing so. *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987). For the treating physician's opinion to be entitled to substantial weight, the opinion must be more than a conclusory statement and must be supported by clinical or diagnostic findings. *Kirk v. Secretary of Health and Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981). Where no such medical documentation is presented and there is no explanation of a nexus between the conclusion of disability and physical findings, the

16

factfinder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).

In the instant action, the ALJ cited sufficient reasons for assigning minimal weight to Dr. Lefkovitz's opinion regarding Hartford's ability to return to work. As noted by the ALJ, Dr. Lefkovitz's opinion of June 2001 that Hartford is "not capable of sustaining employment at this time secondary to severe back and radiating left lower extremity pain" provides no details of her limitations, provides no explanation of why Hartford would not be able to perform even sedentary work, and provides no definition of "at this time." Thus, Dr. Lefkovitz fails to clarify why Hartford is unable to work and how long Hartford would be unable to work. The ALJ further found that Dr. Lefkovitz's 2004 opinion that Hartford is unable to lift or bend is contradicted by her own testimony that she cares for her personal needs, performs household chores, and cooks.

In addition, the ALJ properly discounted Dr. Lefkovitz's treatment notes stating that Hartford is "disabled" or "unable to work" as these notes appear to be repeating Hartford's subjective complaints. The ALJ reasonably assigned less weight to Dr. Lefkovitz's opinion because "physical examination findings must be determined on the basis of objective observations during he examination and not simply a report of the individual's allegations." 20 C.F.R. Pt. 404, Sbpt. P, app. 1 § 1.00 A. *See also*, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). Moreover, statements from any medical source that the claimant is "unable to work" or "disabled" are not medical opinions, but rather comments on an issue reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(e); SSR 96-5p. Opinions on issues reserved to the ALJ are given no special significance. *Id.* Thus, the ALJ properly

17

disregarded Dr. Lefkovitz's findings that Hartford is disabled and unable to return to past employment.

Hartford maintains that the ALJ erred further in failing to give sufficient weight to the opinion of Dr. Jones, an examining physician. Dr. Jones opined that Hartford could not return to her prior job as a cleaner. The ALJ's decision to assign less weight to Dr. Jones is supported by detailed reasoning. Dr. Jones failed to state whether his opinion that Plaintiff was unable to sit for more than one hour, stand for more than 15 minutes, or walk for more than 15 minutes, was in reference to her abilities over the course of an entire eight-hour day or are simply for a period of time without interruption. The ALJ also noted that if Dr. Jones was, in fact, opining that Hartford was unable to sit for more than one hour, stand for more than 15 minutes over the course of an entire eight-hour day, it was inconsistent with his finding that she was not totally disabled. Finally, the ALJ concluded that Dr. Jones's examination findings appear to be based on Hartford's subjective complaints as they are practically identical to Hartford's own reporting of her abilities. As stated previously, the ALJ may properly disregard medical findings based solely on Hartford's allegations. 20 C.F.R. Pt. 404, Sbpt. P, app. § 100A. Thus, the ALJ reasonably gave less weight to the opinions of Drs. Jones and Lefkovitz regarding Hartford's ability to return to her past relevant work and substantial evidence support the ALJ's finding that Hartford, in fact, has the ability to do so.

### VII.  Decision

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: January 7, 2009